**CLOSSON LUMBER COMPANY, INC., Appellant,**

v.

**C. Leonard WISEMAN and Pauline V. Wiseman, Appellee.**

No. 09S02–8705–CV–499.

Supreme Court of Indiana.

May 19, 1987.

John R. Hillis, J.T. Hillis, Hillis, Hillis & Maughmer, Logansport, for appellant.

Scott L. Starr, Walker, Starr & Austen, Logansport, for appellee.

GIVAN, Justice.

The trial court determined that appellee was entitled to $45,000 in damages in compensation for the revocation of use of a parcel of appellant's real estate for purposes of ingress and egress to appellee's retail business. In a memorandum decision, the Court of Appeals affirmed the trial court. We grant appellant's petition for transfer and vacate the Court of Appeals' opinion.

Appellant is the owner of real estate in Logansport which borders on the north and east of business property owned by appellee. The parcel of appellant's property which is in dispute measures approximately sixty (60) feet by sixty-six (66) feet. It fronts Erie Avenue to the north, while the southern border is about two (2) feet north of the western half of the north wall of appellee's warehouse.

In 1948, appellee expressed an interest in using the parcel, which at that time was unimproved, as a means of access to the warehouse. An oral agreement was entered into whereby appellee was permitted to use the property for that purpose. No consideration was given by appellee for the permission to use appellant's property. Subsequently, appellee installed an over-head door in the north wall of the warehouse, blacktopped the parcel and put up a fence on the north property line of the parcel. From 1948 until 1981, appellee generally maintained the property. During that period nearly all of appellee's customers used the disputed parcel for access to appellee's business.

In the summer of 1981, appellant advised appellee of an intent to deny further use of the parcel to appellee. That advisement resulted in appellee's filing of a declaratory judgment action on August 26, 1981, to determine the rights, if any, appellee had in the disputed property. The trial court ruled that appellee held merely an oral, revocable license. The court quieted title in appellant and enjoined appellee from further use of the property.

The Court of Appeals reversed, framing the determinative issue on appeal to be whether the oral license given to appellee by appellant had "ripened into an oral easement" when appellee made expenditures of capital and labor in improving the property in reliance on appellant's representations that appellee could use the property as long as he needed it. *Wiseman v. Closson Lumber Co., Inc.* (1983), Ind.App., 457 N.E.2d 265 (*Closson I*), memo. op. at 2. The court found that appellee had an oral, revocable easement and concluded that the "easement can be revoked if [appellee] is compensated, should he so insist." *Id.* at 3.

On remand, both parties moved for partial summary judgment, and in so doing requested a determination of the scope of damages owed to appellee upon revocation. In granting appellee's motion, the trial court found the appropriate measure of damages to be the fair market value of appellee's property with the easement, as it existed prior to appellant's first objections to continued use, less the fair market value at that time without the easement. The court further found that any lost profits and future earnings, proposed alterations and appraisals might be relevant in arriving at those values.

The court subsequently held that the most reliable method of determining the decrease in the fair market value of appel-

lee's property was the reasonable cost of remodeling appellee's property so as to provide an alternative method of ingress and egress. The court found that the least expensive way to return appellee to the status quo was to extend his building to the west, at a cost of $45,000; therefore, that amount represented the value of appellee's property without the easement. Finally, the court noted that to date no profits had been lost by appellee because appellant had permitted the use of the disputed parcel pending resolution of the case.

Upon appealing that decision, appellant raised three issues: 1) whether the trial court erred in admitting evidence of expenditures made on appellee's real estate; 2) whether compensation upon revocation should be restricted to appellee's expenditures on the disputed parcel; and 3) whether the damages awarded were excessive. The Court of Appeals noted the applicability of the law of the case doctrine and deemed itself bound by the prior determination that the license had ripened into an easement. *Closson Lumber Co., Inc. v. Wiseman* (filed June 10, 1986), Ind.App., No. 2–1085 A 333 (*Closson II*), memo. op. at 3–4. The court found that the appropriate remuneration upon revocation of the easement amounted to returning appellee to the status quo, which it defined as appellee's position in 1981 immediately prior to appellant's expression of an intention to terminate use of the disputed parcel, and concluded that the trial court did not err in its award of damages. *Id.* at 6.

In his dissenting opinion, Judge Sullivan expressed the view that compensation should be limited to those amounts expended on the disputed parcel, since the court's reference to a return to the status quo as a condition precedent to revocation should be to the concept of restitution. *Id.* at 1–2 (Sullivan, J., dissenting). Judge Sullivan also disagreed with the majority's application of the law of the case doctrine, deeming the court's decision in *Closson I* to have "very clearly limited consideration to the fact that '[appellee] expended labor and capital when he paved and fenced the property in question in reliance upon the license' but specifically disregarded, and

properly so," other expenditures because they pertained to appellee's building and not to the disputed real estate. *Id.* at 2.

Initially, we cannot agree with the characterization in *Closson I* of appellee's interest in the disputed parcel as a "revocable easement". While the court's determination of the legal effect of the parties' relationship was essentially correct, in that appellee's interest was subject to a conditional revocation, that interest was more properly termed a license.

▉ In many instances the legal distinction between a license and an easement becomes blurred. As observed by Judge Garrard in *Industrial Disposal v. City of East Chicago* (1980), Ind.App., 407 N.E.2d 1203, interests in real property are often created in a manner which does not precisely correspond to ideal forms.

> "As a result our law early recognized that when a privilege having the characteristics of a license (or deficient in some manner to qualify as an easement) has been executed by the licensee through the expenditure of money or labor in reliance upon the license being perpetual, or when a license has been given for a valuable consideration paid, it cannot be revoked by the licensor unless he remunerates the licensee, (citations omitted), or restores him to status quo, (citations omitted)." *Id.* at 1205.

Events occurring subsequent to the granting of a license may, in effect, change a license otherwise revocable at law into an easement enforced in equity. *Lake Erie and Western Railway Co. v. Kennedy* (1892), 132 Ind. 274, 31 N.E. 943; *Snowden v. Wilas* (1862), 19 Ind. 10. Thus our courts have recognized that an "irrevocable license" is in legal effect no different than an easement, and have used those terms interchangeably. *Industrial Disposal, supra* at 1205–06.

▉ Appellee's interest here, however, is not the legal equivalent of an easement. The license granted by appellant was gratuitous and is not irrevocable by way of estoppel. Nor did appellee's interest "ripen" into an easement, as appellee's use of

the disputed parcel was at all times permissive, at least until appellant's attempt to terminate the relationship in 1981.

■ As suggested by Professor Powell in his treatise on real property, it is advantageous to look at the nature of the parties' relationship at the time of the attempt to terminate the relationship. 3 *Powell on Real Property* § 427 (1987). If the relationship began with a revocable permission but subsequent events have eliminated that revocability, the existing irrevocable relationship should be called an easement. If, on the other hand, the relationship is presently revocable, the term license should be used to define the interest. *Id.; see Restatement of Property* § 514 comment c (1944) (if a privilege is subject to the will of the landowner, it must be a license rather than an easement).

■ Having determined appellee's interest in the disputed parcel to be a license, revocable upon compensation by appellant, the crucial issue becomes what should be the extent of that compensation. In circumstances such as these, the proper remedy is restitution. 3 *Powell supra* at § 429. As correctly stated by Judge Sullivan in his dissent, the remuneration payable upon revocation should be limited to such amounts as have been expended upon the disputed parcel. *Closson II, supra,* memo. op. at 2–3 (Sullivan, J., dissenting), *citing Clauser v. Jones* (1885), 100 Ind. 123. Any prospective expenditures to remodel appellee's warehouse should not be considered, as the proper measure of damages is restitution rather than consequential damages, which could conceivably be awarded upon the unlawful obstruction of an easement.

Thus we agree with appellant that the trial court's award of damages is excessive. To permit the award to stand would be inequitable to appellant and would result in the unjust enrichment of appellee. Appellee, who gave no consideration for the oral license, has enjoyed the use of appellant's property for over thirty years. Appellee has never paid real estate taxes or other assessments on the disputed parcel, and has never compensated appellant for the use of the property.

The damages payable by appellant upon revocation should be limited solely to the amount of labor and capital expended by appellee to improve the disputed parcel. It is not entirely clear from the record what amounts appellee has so expended, although there is evidence of a $500 expenditure for blacktopping the parcel. Only evidence pertaining to such expenditures, as well as pertinent evidence regarding use and depreciation, would be relevant. We also agree with appellant that the trial court erred in admitting evidence of expenditures made on appellee's property, and also find that the evidence regarding the prospective expenditures was not relevant.

■ As to the applicability of the law of the case doctrine in regard to the scope of damages, questions not conclusively decided in a prior appeal do not become the law of the case. *Egbert v. Egbert* (1956), 235 Ind. 405, 132 N.E.2d 910. While the Court of Appeals in *Closson I* reversed the trial court on the basis that appellee had a compensable interest in the disputed parcel, the court did not conclusively decide the scope of damages to be awarded upon revocation. On remand, the measure of compensation presented a new question to be decided, and new evidence was presented on that issue. What was decided in the prior appeal must clearly appear to be the only possible construction of the opinion if the rule of the law of the case doctrine is to be invoked. *Egbert, supra* at 417, 132 N.E.2d at 916.

Transfer is granted and the opinion of the Court of Appeals is vacated. This cause is remanded to the trial court for further proceedings not inconsistent with this opinion.

SHEPARD, C.J., and PIVARNIK and DICKSON, JJ., concur.

DeBRULER, J., dissents with separate opinion.

DeBRULER, Justice, dissenting.

In this case the original grant by Closson, the owner of the servient land, to

Wiseman, the owner of the adjacent dominant land, was for parking and to facilitate the access of customers of Wiseman's business to the dominant land and was to last for so long as Wiseman might need it. Wiseman then made expenditures of capital and labor upon both the servient and dominant lands in reliance upon the grant, which events were held by the Court of Appeals in its first opinion to have given rise to the legal right to compensation in the event the grant was revoked. The revocability of the right granted and the recoverability of compensation for the revocation of the right were the law of this case as it confronted the trial court on remand for a determination of compensation due Wiseman for the revocation.

The trial court on remand determined the appropriate measure of compensation due Wiseman to be the difference between the fair market value of Wiseman's property with the right in existence and at the time of Closson's first objections to continuance of the right, and the value of Wiseman's property immediately after such point in time without the right. The trial court also deemed any proven lost profits and possible future earnings, proposed alterations, and appraisal to have relevance in arriving at these before and after values.

I regard the approach of the trial court to be in conformity with the majority view that restitution should be the measuring concept. To restore, involves the contemplation of a loss or change of position, and then the receipt of an equivalent of that which was lost or a return to an equivalent position. The majority opinion does not result in restitution.

There is furthermore nothing inequitable in the trial court's approach. It is also in conformity and not at odds with the case of *Clauser v. Jones* (1885), 100 Ind. 123. I read that case as holding that expenditures by the owner of the dominant land for improvements upon the dominant land can defeat revocability if such improvements are known by the owner of the servient land to be part of a plan to make reasonable use of the right granted. If those improvements are reasonably to be contemplated as part of the dominant owners plan to utilize the right granted in conjunction with a use of his own property, and can defeat revocability, then I believe the law should countenance the cost of such visible and obviously connected improvements upon the dominant land as an element in determining an equitable restitution for loss of the right.

If for example, I grant my neighbor a license to cross my land to reach a farm field, and I observe him do so with a plow and planter, and there till the field and plant it, and then I revoke the license before he has harvested his crop, I should be required to restore his lost investment. To ignore the investment in farming the field, an activity within contemplation of the license, in determining an equitable restitution, would seem to me to be tantamount to condoning a fraud.